**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**CIVIL ACTION NO. 04-266-JBC**

**BOARD OF EDUCATION OF**
**FAYETTE COUNTY, KENTUCKY,**                                      **PLAINTIFF,**

**V.**                    <u>**MEMORANDUM OPINION AND ORDER**</u>

**L.M., as Legal Guardian of T.D.,**
**a minor, et al.,**                                      **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \* \***

This action is before the court upon the parties' briefs (DE 27, 31) appealing various determinations by the Exceptional Children's Appeal Board ("ECAB").  For the reasons that follow, this court will affirm all of these decisions.

T.D. was identified as a child with a disability just prior to the conclusion of the 2002-2003 school year.  The parents of T.D. asserted their right to a due process hearing on May 13, 2002, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, *et seq*.  The hearing was held and a decision entered by an Impartial Hearing Officer ("IHO") on January 30, 2004.  The IHO found that T.D. was denied Free Appropriate Public Education ("FAPE") for his third- and fourth- grade years (2001-2002 and 2002-2003) due to the Board's failure to refer T.D. for special education after his second-grade year.  The IHO further awarded 125 hours of compensatory education to T.D., consisting of one-on-one instruction in reading and language skills.  The IHO further found that T.D. was entitled to compensatory education for the Board's failure to provide the

student with any type of extended-school-year ("ESY") service in the summer of 2003.  The IHO also ordered the Board to invite T.D.'s private psychologist to the Admission and Release Committee ("ARC") meeting and to pay a reasonable fee to procure the psychologist's attendance, if necessary.  The decision was appealed to the ECAB.  The ECAB entered its decision on May 14, 2004, affirming the decision of the IHO in large part, but altering the award to the student.  The ECAB ordered compensatory education for two years due to the Board's delay in identifying T.D. as disabled and providing T.D. with special education services, and it awarded compensatory education for the summer of 2003, because the student should have received ESY services that summer.  Rather than award a particular number of hours of compensatory education, the ECAB ordered T.D.'s ARC to prepare and carry out a plan for providing T.D. with compensatory education services and to meet as required to review and modify the plan, not less than once every twelve months, until the ARC determines that the award is fulfilled.

This action was brought by the Board of Education of Fayette County, Kentucky, to appeal two determinations made by the IHO and affirmed by the ECAB.  First, the plaintiff appeals the ECAB's determination that the child, T.D., is entitled to ESY Services for the summer following the 2002-2003 school year.  The plaintiff also appeals the ECAB's determination that the child's private psychologist's attendance is required at the ARC meeting and that the Board is responsible for obtaining and compensating the psychologist's attendance.

2

The defendants have asserted eleven counterclaims, challenging various findings by the ECAB and details of T.D.'s individualized education program ("IEP"). First, the defendants claim that the ECAB's order requiring the ARC to prepare a plan for providing compensatory education for two years and one summer did not provide a meaningful mechanism for resolving the issues in dispute and that the order should have contained a specific number of hours of compensatory education. The defendants' second counterclaim asserts that the ECAB erred by failing to find that the student was denied FAPE in the first and second grades due to the Board's failure to identify the student as a child with a disability. Counterclaim three asserts that the Board denied T.D. FAPE by failing to provide sufficiently tailored ESY, with full parental participation, for the summers of 2000, 2001, and 2002. In counterclaim four, the student argues that the Board failed to provide placement in the least restrictive environment ("LRE"). The defendants claim that failure to include a math goal in T.D.'s IEP denied T.D. of FAPE as counterclaim five. Counterclaim six states that the student's IEP was also deficient due to its exclusion of a behavioral strategy. T.D.'s parents' assertion that they were denied meaningful participation in planning behavioral strategies is the basis for counterclaim seven. T.D. challenges the ECAB's determination that the details of T.D.'s behavioral intervention plan ("BIP") are part of a teaching methodology in counterclaim eight. Counterclaim nine states that the school district's "child find" procedures were inadequate. In counterclaim ten, the defendants allege that the

behavior goals listed in the IEP are too vague.  Finally, counterclaim eleven cites as error the omission of the expected duration and start date from T.D.'s IEPs .

**Standard of Review**

The district court reviews determinations by the ECAB under a "modified de novo standard of review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). The standard of review for an IDEA action is outlined at 20 U.S.C. §1415 (I)(2)(B)(iii), which states that the court shall base its decision on the preponderance of the evidence and may award the relief that the court deems appropriate.  The Sixth Circuit Court of Appeals has interpreted the statute to require the district court to give deference to determinations of the ECAB regarding credibility and requiring educational expertise.  *N.L. v. Knox Co. Sch.*, 315 F.3d 688 (6th Cir. 2003); *Tucker v. Bd. of Educ.*, 136 F.3d 495 (6th Cir. 1998).  The court determines whether the state has complied with the procedures set forth in IDEA and whether the IEP developed through those procedures is reasonably calculated to enable the child to receive educational benefits.  *Burilovich v. Bd. of Educ.*, 208 F.3d 560, 565 (6th Cir. 2000). The administrative findings in an IDEA case may be set aside only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both.  *Id*. at 567.

**Legal Analysis**

4

**Plaintiff's Claim I: Summer 2003 ESY Services**

ESY services are required only if a child's IEP team determines that such services are necessary.  34 C.F.R. § 300.309.  As T.D. was identified as a child with a disability just prior to the conclusion of the 2002-2003 school year, there was no IEP team determination regarding ESY made prior to the summer.  While an ARC was convened in early 2003, no IEP goals were agreed upon prior to the conclusion of the 2002-2003 school year.  The legal standard for determining whether ESY is appropriate requires evaluating whether ESY would prevent significant regression of skills.  *Cordrey v. Eukert*, 917 F.2d 1460 (6th Cir. 1990); *D.M v. Sch. Dist.*, 303 F.3d 523 (4th Cir. 2002).  The court must inquire whether the benefits accrued to the student during the school year would be significantly jeopardized absent ESY.  *Alamo Heights Ind. Sch. Dist. v. Bd. of Educ.*, 790 F.2d 1153, 1158 (5th Cir. 1986).  While all agree that T.D. has a history of problems with recoupment and regression in his regular education classes, the plaintiff argues that the legal standard requires that the evidence must show regression *related to* established IEP goals.  As there were no such goals established prior to the summer of 2003, no evidence of that kind was available.  Furthermore, the plaintiff relies upon the IHO's finding that T.D. made no progress during the 2002-2003 school year, arguing that as T.D. accrued no benefits during the year none could be lost. Finally, the plaintiff asserts that a determination by the Board requiring ESY for T.D., in light of the lack of IEP goals and evidence of the student's progress, would

5

have been premature, haphazard, and speculative.

The student argues that the IHO correctly found that the Board and the ARC wrongfully refused to offer ESY services to the student in the summer of 2003. The student further argues that the IHO's determination that the ARC failed to make the appropriate multi-faceted analysis necessary to determine the propriety of ESY constituted a denial of FAPE.  The student further points to the ECAB's holding that T.D. presented sufficient evidence – regression in test scores, teachers' comments, and witness testimony – to show that he needed ESY services during the summer months of 2003, while the Board failed to offer any evidence to dispute the issue.  The defendants also argue that the court would be rewarding the Board's failure to have an IEP in place in a timely manner if it accepted the plaintiff's argument and allowed the plaintiff to prevail and avoid the obligation to compensate the student for the failure to provide ESY in the summer of 2003. *Corpus Christi Ind. Sch. Dist.*, 37 I.D.E.L.R. 203 ( 2002).  The defendants further argue that requiring the student to adhere strictly to the notion that there can be no ESY without an IEP contravenes IDEA's purpose "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs. . . ."  20 U.S.C. § 1400 (d)(1)(A).  The nature of IDEA implies the necessity of a fact- and case-specific analysis focusing on the needs of the child rather than rote application of the statute.  *See In re Zach Deal* (finding appeals board erred in

6

determination that the sole purpose of ESY is to continue an existing IEP and that

absent an IEP there is nothing to continue).  The court agrees with the defendants'

position and finds that the administrative determination that T.D. is entitled to

compensatory education for the 2003 ESY is well supported by the evidence and

the law.  The court will deny the plaintiff's first claim.

### Claim II: Psychologist's Attendance and Compensation

Membership in the ARC is statutorily defined to include:

> (i) the parents of a child with a disability; (ii) at least one regular education teacher of such child (if the child is, or may be, participating in the regular education environment); (iii) at least one special education teacher, or where appropriate, at least one special education provider of such child; (iv) a representative of the local educational agency who– (I) is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities; (II) is knowledgeable about the general curriculum; and (III) is knowledgeable about the availability of resources of the local educational agency; (v) an individual who can interpret the instructional implications of evaluation results, who may be a member of the team described in clauses (ii) through (vi); (vi) at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate; and (vii) whenever appropriate, the child with a disability.

20 U.S.C. § 1414 (d)(1)(B).  The statute allows but does not require the

attendance of individuals with knowledge concerning the student, such as the

student's private psychologist.  Educational experts selected by the parents may be

included in the ARC, but the Board is not required either to include the expert or to

follow his recommendations.  *See Dong v. Bd. of Educ.*, 197 F.3d 793 (6th Cir.

7

1999). The plaintiff contends that submission of a written report from T.D.'s private psychologist would sufficiently guide the ARC. Furthermore, argues the plaintiff, ordering the Board to secure and compensate a private psychologist is an improper award of prospective relief made in the absence of any proof that an ARC consisting only of the statutorily required members would not be able to create an appropriate educational plan without assistance.

In response, the defendants first note that they believe the court should order a specific number of hours of compensatory education, rather than deferring to the determination of the ARC, obviating the need for a conclusion on the psychologist issue. The defendants argue that while a psychologist's presence is not required under the statute, the statute deals with the provision of FAPE. The IHO's order, on the other hand, deals with the provision of compensatory education. Compensatory education, as an equitable remedy for the failure to provide FAPE, can and does include requirements above and beyond those contemplated to provide a FAPE. While the administrative determination requiring that the Board compensate the psychologist for attending the ARC meeting (if compensation is required) is perhaps unusual, such an award is not unreasonable in this case. The agency reasoned that an ARC equipped with appropriate information and membership would be able to devise an individualized plan for compensatory education superior to any hour amount the agency might award without benefit of monitoring T.D.'s progress. As the administrative agency has declined to award a

8

particular number of hours of compensatory education, opting instead to defer to an ARC's plan for compensating the student, the court finds the requirement of the psychologist's attendance and compensation appropriate in this particular instance. Accordingly, the plaintiff's second claim will be denied.

**Counterclaim I: Amount of Compensatory Education**

The plaintiff argues that an award of 2,100 hours (two full school years of instructional hours) is an extraordinary number of hours, that very few disabled children require all special education classes, and that such an award is not warranted in this case.  There is no evidence in the record to indicate that such an award would be appropriate.  The administrative panel has developed an extensive record of T.D.'s educational deprivation.  T.D.'s parents will be allowed to attend the ARC meeting that will be held to establish the needed compensatory education services, and they can invite any experts to attend or to submit written reports to guide the ARC's determination.  The court finds no reason to believe that the ECAB's award was inappropriate or that it will not compensate the student.  On the contrary, as indicated in the court's discussion of the plaintiff's second claim, the ECAB's award is more innovative and likely to be more tailored to T.D.'s needs than an award of a particular number of hours predetermined without benefit of observing T.D.'s progression.

**Counterclaim II: Untimely Identification of Disability**

A school board is required to identify a child with a disability within a

9

reasonable time.  *W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir. 1995).  "A district's duty to take steps to identify a child for IDEA special education eligibility is formulated in terms of a two-part analysis.  The duty is triggered when the district has reason to suspect a disability, and reason to suspect that special education services may be needed to address that disability."  *Davonne B. v. Houston I.S.D.*, No. 327-SE-596 (Texas I.H.O. Decision, May 2, 1997).  A suspicion connotes a relatively low threshold.  In this instance, T.D.'s teachers did react to T.D.'s problems – they noted the appropriate areas of concern in T.D.'s records and implemented interventions related to T.D.'s difficulties.

At the hearing, T.D.'s treating psychologist, Dr. Sanders, stated, "it seems fairly clear to me" that T.D. had ADHD in kindergarten. The defendants allege that the Board violated IDEA's child-find requirement and failed to notify T.D.'s parents of their rights.  The child-find requirement is that the state must have in place policies and procedures that ensure that all children with disabilities who are in need of special education and related services are identified, located, and evaluated even though they are advancing from grade to grade.  34 C.F.R. Part 300, §300.125; KAR 1:300.  Failure to identify a child for IDEA eligibility could give rise to compensatory services where there has been a later determination regarding the child's IDEA eligibility and the nature and extent of services necessary for the child to receive FAPE.  Were the child found eligible and in need of IDEA services, one could state a claim for services that should have been delivered between the date

on which services would have been commenced had the child been identified in a timely manner. *Texas v. Corpus Christi Ind. Sch. Dist.*, 31 I.D.E.L.R. 41 (1999). The defendants argue that T.D. was denied FAPE in the first and second grades as a result of the Board's failure to follow procedures and refer T.D. for the appropriate evaluation in a timely manner. Procedural violations causing substantive harm can cause liability to attach. *Metro. Bd. of Public Ed. v. Guest*, 193 F.3d 457 (6th Cir. 1999). The court in *Clay T. v. Walton County School District* announced the rule that "in order to establish that the school violated the identification requirements of IDEA, Plaintiff must show that school officials overlooked clear signs of disability and were negligent in failing to order testing, or that there was no rational justification for not deciding to evaluate." 952 F. Supp. 817 (M.D. Ga. 1997). The ECAB determined that the end of the second-grade year was the appropriate time for a referral. The school district was required to provide only a basic floor of educational opportunity under IDEA. *Rowley*, *supra*. Through interventions and related services, the school district did provide such a floor. It is difficult to assess whether a very young child is disabled or merely developing at a rate different from his peers, and the educational experts involved all seem to indicate that a hasty referral for special education can be damaging to the child. T.D. has not established that the Board's alleged failure to follow child-find procedures caused substantive harm so as to have deprived T.D. a basic floor of educational opportunity.

11

**Counterclaim III: Summer ESY 2000-2002**[1]

The ECAB has already awarded compensatory education for the school years following the time when T.D. should have been identified as disabled under IDEA. A further award of compensatory education based on the Board's failure to identify T.D. as a child with a disability after T.D.'s second-grade year would be premature at this point. Furthermore, in light of the court's affirmance of the propriety of the ECAB's decision not to award a specific number of hours of compensatory education, fashioning an award of two summers of ESY would be both difficult and inappropriate. The purpose of ESY is to prevent significant regression of skills. *Cordrey, supra.* The Board has already been directed to provide T.D.'s compensatory education in a manner that will provide T.D. with the maximum benefit without becoming punitive. The court construes this directive as ensuring that T.D. does not significantly regress.

**Counterclaim IV: Least Restrictive Environment ("LRE")**

The defendants want T.D. to be placed in a collaborative learning environment: a regular classroom with a teacher of exceptional children providing specially designed instruction. Furthermore, the defendants claim that T.D. will suffer low self-esteem and will therefore be psychologically harmed by removal

---

[1] The student's claim to entitlement to compensation for missing ESY for the summer of 2000, based on T.D.'s assertion that he should have been identified as qualified under IDEA for the school year preceding that summer, is overruled in light of the court's determination that the Board did not deny FAPE by failing to refer T.D. for evaluation prior to his second grade year (2000-2001 school year).

12

from the classroom.

A child must be educated in the LRE that will provide a meaningful educational benefit. *Oberti v. Bd. of Educ*., 995 F.2d 1204 (3d Cir. 1993). LRE requires mainstreaming the child as much as possible while maintaining satisfactory education. 20 U.S.C. § 1412 (a)(5)(A)*; S.H. v. Sch. Dist.*, 336 F.3d 260 (3d Cir. 2003). The ECAB determined that T.D. cannot be successful in a regular classroom all day and therefore must be taught in the resource room for one-half hour each day. T.D. argues that the evidence upon which the ECAB based its decision was collected prior to the IEP, resulting in the use of an inappropriate baseline, and that witness testimony establishes that T.D. can be successful in a regular classroom.

The plaintiff points out that T.D. will be outside the regular classroom for only thirty minutes per day to receive intensive reading instruction. The school psychologist found that T.D. requires few distractions to have successful one-on-one work. The IHO found this testimony more credible than that of T.D.'s private psychologist, who has never seen T.D. in a classroom setting. Furthermore, T.D.'s parents requested that T.D. receive occupational therapy outside the regular classroom, mitigating the level of concern for T.D.'s self-esteem.

The regular classroom may not be appropriate to achieve benefits to the child. The court, having never met T.D. and without benefit of expertise on the student's self-esteem and level of ability to ignore distractions, will defer to the

13

reasoned explanations and opinions of those who have observed the child.  The preponderance of the evidence supports the propriety of allowing the Board to teach T.D. outside the classroom for short thirty-minute intervals in order to achieve satisfactory education.

### Counterclaim V: Omission of Math Goal from IEP

The student argues that his records reflect a clear deficiency in math.  The IHO determined that T.D.'s difficulties in math stemmed from his ADHD and that improving T.D.'s reading and language comprehension skills will improve his math. The court will not second-guess education experts, and T.D. has not shown any reason that the court should do so.

### Counterclaims VI, VII, VIII: Behavioral Strategies

An IEP must be reasonably calculated to enable the child to receive educational benefits.  *Tucker v. Calloway Co. Bd. of Educ.*, 136 F.3d 495, 503 (6th Cir. 1998).  The burden is on the party challenging the terms of an IEP to show that it is inadequate.  *See Cordrey*, 917 F.2d at 1469.

L.M. has proposed a behavioral strategy that he claims should have been adopted.  The plaintiff counters that the BIP is an issue of methodology, and parents of disabled children are not entitled to require that a specific methodology be used.  *Renner v. Bd. of Educ.*, 185 F.3d 635, 645 (6th Cir. 1999).  Mere disputes over methodology are not actionable.  *Rettig v. Kent Sch. Dist.*, 720 F.2d 463 (6th Cir. 1983).  Furthermore, there are no statutory requirements for a BIP,

14

making it impossible to evaluate whether it is substantively invalid.  *Alex R. v. Forrestville Valley Sch*., 375 F.3d 603, 614-15 (7th Cir. 2004).

The defendants claim that T.D.'s parents were denied meaningful participation in planning behavioral strategies at an ARC meeting.  T.D.'s parents were included in the ARC meetings and were provided the opportunity to express their views.  They were given copies of the BIP and were allowed to comment.  The BIP was developed outside formal ARC meetings, but T.D.'s parents were invited to attend.  They chose to decline.  The necessity of parental participation in T.D.'s educational plan does not preclude discussions about the student's education outside formal ARC meetings.  *See Burilovich*, 208 F.3d at 568.  While parental participation is a key element of IDEA, the defendants have not shown that the Board failed to allow their participation.

### Counterclaim IX: "Child Find" Procedures

The topic of "child find" procedures is inappropriate for the court's review, which is limited to whether T.D. should have been referred earlier than the end of the student's second-grade year.  The court has resolved this query pursuant to the defendants' second counterclaim and need not address it further.

### Counterclaims X and XI: Inadequacy of Behavioral Goals and Dates

The issues before the IHO were (1) whether the Board failed to appropriately identify, initiate a referral, and evaluate T.D. under IDEA's child find requirements; (2) whether the Board failed to provide ESY services during the summers between

15

1999 and 2003; (3) whether the Board failed to develop an appropriate IEP in 2003; and (4) whether the Board properly developed the BIP.  The ECAB reviewed these eight issues: (1) whether an award of 125 hours of compensatory education was sufficient; (2) whether the Board had child find policies in place; (3) whether T.D. was referred for evaluation in a timely manner; (4) whether T.D. was denied FAPE during his second grade year; (5) whether T.D.'s IEP should have included a math goal; (6) whether T.D.'s BIP should have been developed within the IEP process and included therein; (7) whether T.D. should have received ESY for the summers of 2001 and 2002; and (8) whether T.D. received placement in the LRE.

The district court is to review the issues that were presented to the state agency.  *See Rowley, supra*; *Alamo Heights Ind. Sch. Dist. v. Bd. of Educ.*, 790 F.2d 1153, 1159 (5th Cir. 1986).  The defendants state that the issues of clarity of behavioral goals and duration of remediation were before the agency, but that the agency improperly failed to address the issues.  To the extent that this assertion is true, the court will address the counterclaims.  First, the nature of behavioral strategies implies reactive methodology.  That is, merely hypothetical methods may be used, in anticipation of student behavior.  The goals and objectives for T.D.'s behavior must be broad enough to allow each teacher to implement them in his or her own classroom setting.  In light of the nature of the strategies, the court finds that they are appropriate.

An IEP must include a proposed starting date and anticipated duration. 20

16

U.S.C. §1401(19).  However, a remedy exists for the failure to adhere to this procedural violation only if it results in substantive harm.  *Knable v. Bexley Sch. Dist.*, 238 F.3d 755 (6th Cir. 2001).  As the defendants failed to allege any substantive harm and the court detects none, the claim will be denied.  Accordingly,

    **IT IS ORDERED** that the determinations made by the ECAB are **AFFIRMED**, and the parties' claims and counterclaims are **DENIED** for the reasons stated in the foregoing opinion.

    Signed on March 6, 2006

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY